IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| TEYWONIA BYRD ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | **COMPLAINT** |
| ) | (Jury Trial Requested) |
| FAT CITY CONDOMINIUM OWNERS ) | |
| ASSOCIATION, INC ) | |
| ) | |
| Defendant. ) | |

COMES NOW the Plaintiff, by and through undersigned counsel, complaining of the Defendant, and alleges and says the following:

## NATURE OF THE CASE

This action is brought pursuant to 42 U.S.C. §1981. The jurisdiction of this Court is invoked to redress the deprivation of rights guaranteed by federal law as well as those rights guaranteed by the constitution of the State of North Carolina. These rights provide for damages for illegal discrimination in the making and enforcement of contracts. Plaintiffs seek damages, including, but not limited to, lost pay, lost income, loss of past, present, and future benefits, compensatory and punitive damages, and mental anguish, suffered as a result of the intentional and unlawful discrimination by Defendants as more fully described below.

## PARTIES AND JURISDICTION

1. Teywonia Byrd ("Plaintiff Byrd") is and at all times relevant to this Complaint was, and is at all times relevant to this complaint, an African-American female citizen and resident of Charlotte, Mecklenburg County, North Carolina.

2. Plaintiff Byrd is a resident of the Fat City condominiums governed by Defendant.

3. Upon information and belief, Defendant Fat City Condominium Owners Association ("Fat City") is a duly organized corporation, operating and existing pursuant to the laws of the State of North Carolina.

4. This Court has original jurisdiction over the subject matter of the complaint outlined herein.

5. This Court may exercise personal jurisdiction over Defendant, as Charlotte, North Carolina is where the Defendant resides.

6. Venue is proper pursuant to USC §1391 as the Charlotte Division is the division in which the actions taken against Plaintiffs arose and is the county in which all Defendants reside.

## FACTUAL ALLEGATIONS

7. The allegations contained in paragraphs 1-5 are realleged and incorporated herein by reference.

8. Plaintiff Teywonia Byrd has been and continues to be discriminated against, on the basis of her race in the enforcement of the Fat City Condominium's promulgated rules, regulations, bylaws and or declarations.

9. On or around June 2020, Plaintiff relocated to the Fat City condominiums.

10. Upon information and belief, there are approximately twenty-six (26) residential units and four (4) commercial units on the property.

11. There exists a contractual relationship between Plaintiff Byrd and Defendant that

2

commenced upon Plaintiff acquiring ownership of one of the residential units. As such, all unit owners and occupants are bound by the covenants and regulations set forth in Mecklenburg County Register of Deeds Book 28038 Page 267.

12. Upon moving into the Charlotte based condo, as a unit owner, Plaintiff Byrd is a member of the condominium's homeowner association.

13. Plaintiff was elected by then members of the association to serve as a board member.

14. Plaintiff Byrd fulfilled her role as Vice President satisfactorily, and to the benefit of *all* members of the Fat City owners association.

15. Plaintiff suffered a traumatic experience involving a former resident. The experience resulted in Plaintiff attempting to press criminal charges against the resident; however, no evidence was available due to Defendant's lack of concern for Plaintiff's safety.

16. Plaintiff's attempt to press charges failed because Defendant's security cameras did not capture video of the resident, resulting in insufficient evidence to pursue her attacker.

17. Upon information and belief, the security cameras facing the elevator where the encounter occurred were not kept in a functioning condition.

18. Due to the lack of resident safety regarding the non-functioning camera, evidence could not be obtained to support Plaintiff Byrd's charges, furthering her emotional distress. Plaintiff began to feel increasingly unsafe each day the camera was not in

3

working order out of fear of another attack.

19. Plaintiff Byrd, upon becoming aware of a security camera outage, inquired about repairs to both Defendant and Defendant's management company at the time, Hawthorne Management Company. No action was taken.

20. At some time during the following year, Plaintiff became more involved with the owners association and again found the security cameras were not in working condition.

21. Defendant did not immediately restore the security camera to working condition.

22. Defendant's blatant failure to repair the cameras surmounts to a failure to discharge it's obligation to unit owners or occupants with due diligence and care for their safety.

23. Plaintiff needed to protect herself and as a result installed a Ring Peephole camera so she could monitor who entered or attempted to enter her residence.

24. During her tenure on the HOA Board of Directors, Plaintiff made an effort to review the working camera footage for the safety of her fellow residents.

25. Plaintiff is a single, middle aged African American woman, and felt extremely unsafe in her home due to Defendant's failure to ensure resident safety.

26. The declarations ("Declarations") filed in Book 28038 Page 267 with the Mecklenburg County Register of Deeds, prohibits modifications to the condominium units without submission in writing of an architectural ("ARC") form to the board.

27. Plaintiff witnessed modifications to unit limited common elements by several other residents.

28. Upon information and belief, no ARC form was submitted by these residents prior to the modifications.

29. Plaintiff Byrd realized during her time serving on the Board, several other residents had modified their units in ways that would require submission of the ARC form.

30. Upon information and belief, at this point in time these residents were not asked to submit an ARC form.

31. Upon information and belief, none of the residents with modifications to their units submitted to Fat City an ARC form to be approved.

32. Plaintiff Byrd was the only resident asked to submit an ARC form for her modification, a small ring peephole camera.

33. Plaintiff Byrd submitted the requested form which was subsequently denied despite Defendant's knowledge of the non-working security cameras, and Plaintiffs previous traumatic incident.

34. Plaintiff Byrd continues to witness violations of the Declarations recorded in the Mecklenburg County Register of Deeds including but not limited to:

   i. Umbrellas/Lights on balconies

   ii. Cones hanging from balconies

   iii. Displays of political and/or national flags

   iv. Unapproved decorations and/or door mats

5

v. Unapproved color locks; keypad/digital locks

35. Upon information and belief, although several other residents are in breach of the Declarations as promulgated, only Plaintiff was forced to comply.

36. Defendant Board requested Hawthorne Management Company to send a violation notice to Plaintiff for the ring camera.

37. After Defendant demanded a violation notice be sent to Plaintiff, Hawthorne Management refused to do so on the grounds that it was an unfair and selective enforcement singling out Plaintiff Byrd. Defendant Board asserted it was unaware of any other violations despite being on the same hallway and floor.

38. Once Plaintiff complained of the selective enforcement, Defendant attempted to retroactively send violation warnings to other residents to cover the discriminatory conduct. These warnings consisted of notice that Defendant would start enforcing previously unenforced violations.

39. Plaintiff was notified by the Defendant's management company she would be fined $100 and $100 per day after 5 days if the violation was left uncured.

40. Upon information and belief, other residents in violation of the declaration, rules, regulations and or covenants, have not been subjected to such a fine for their respective violations.

41. Plaintiff documented the existence of each violation during the time she was being admonished for the ring camera protecting her safety.

42. After witnessing several violations by other unit owners, Plaintiff attempted to

locate the respective ARC forms for each violation to no avail.

43. Plaintiff Byrd was retaliated against and accused of being the resident who reported illegal handicap parking at the Fat City condominium.

44. In fact, after being publicly humiliated at a meeting of the owners association, a resident harassed and belittled Plaintiff regarding her reports of harassment and discriminatory treatment by Defendant.

45. Upon information and belief, the resident harassing Plaintiff has previously made racist and or derogatory remarks regarding non-white persons.

46. Plaintiff was sexually harassed by board member Manny Ndingwan ("Manny") when he sexually propositioned her to come spend a weekend with him at his condominium located in Greensboro, North Carolina. Plaintiff refused due to the fact Mr. Ndingwan is married.

47. Upon information and belief, denial of Manny's proposition to Plaintiff caused him to further treat Plaintiff adversely by allowing the abuse of his power and position as a board member.

48. Upon information and belief, residents Austin Tinsley and Tyler Wagoner stated in an association meeting, Plaintiff was responsible for reporting all residents who had gotten a parking ticket violation for illegally parking in the designated handicap spaces.

49. After being publicly humiliated at the meeting of the owners association, Austin continued harassing and belittling Plaintiff regarding her reports of the handicapped

7

parking spaces.

50. Upon information and belief, Austin has previously made racist and or derogatory remarks regarding minorities. This was noted in a board meeting, at which board members present warned of the behavior.

51. Plaintiff Byrd engaged in protected activity when she made complaints regarding the discriminatory and selective enforcement of Fat City rules as promulgated.

52. Plaintiff further engaged in protected activity when she communicated with the Charlotte-Mecklenburg Police Department ("CMPD") regarding illegal use of the handicap parking spaces.

53. Subsequently, Plaintiff Byrd was subjected to increased torment and harassment by Defendant and other residents.

54. When Plaintiff complained further to Defendant, no actions were taken. This process continued to repeat, until Plaintiff's mental stability diminished.

55. Plaintiff became extremely fearful of continued retaliation by Defendant and other unit residents.

56. As a result of her extreme fearfulness, Plaintiff developed extreme and acute anxiety resulting in a medical diagnosis.

57. The severity of her anxiety is the result of Defendant's direct indifference to her concerns as a resident unit owner, and has required her to undergo prescribed medication for extreme anxiousness.

58. The severity is further exacerbated by the sexual harassment of Plaintiff by board

8

member Manny Ndingwan.

59. After Defendant repeatedly ostracized and humiliated Plaintiff, Plaintiff was mailed a bag of gummy male genitalia and told to "eat a bag of dicks" by another resident.

60. The incident was egregious in nature and brought to Defendant's attention, yet no action was taken on behalf of Plaintiff.

61. Defendant's behavior is ongoing and continuous, and has caused Plaintiff to be unable to inhabit the home she purchased. Plaintiff has had to temporarily relocate to a safer, more aware community where her safety concerns will not be ignored.

## COUNT I
(Violation of 42 U.S.C. §1981)

62. Paragraphs 1 through 61 are hereby incorporated by reference.

63. Defendant has illegally and unjustifiably discriminated against Plaintiff Byrd, on the basis of her race by selectively enforcing the condominium rules and regulations.

64. Defendant did not enforce the contractual obligations found in the rules, restrictions, and or covenants of Fat City in equal or equitable fashion as afforded to white unit owners.

65. Such conduct has damaged Plaintiff and deprived her of her right to enjoyment of her condominium unit causing severe emotional distress requiring medication.

## COUNT II
(Intentional Infliction of Emotional Distress)

66. Paragraphs 1 through 65 are hereby incorporated by reference.

67. Defendant has acted intentionally and recklessly with regard to Plaintiff's concerns

9

and experiences knowing a conscious disregard of the same would be substantially certain to cause Plaintiff harm.

68. Defendant's conduct was profusely extreme and outrageous such that failing to discharge its duties in good faith and with all due diligence and care for unit owners and or occupants constitutes behavior any ordinarily prudent person (in this case a resident) would find utterly appalling and equally concerning.

69. Such conduct has damaged Plaintiff and deprived her of her right to enjoyment of her condominium unit causing severe emotional distress including diagnosis of acute anxiety from the events that has required prescription medication.

## COUNT III
(Breach of Fiduciary Duty)

70. Paragraphs 1 through 69 are hereby incorporated by reference.

71. Defendant owes a statutory fiduciary duty of care to *all* members of the Fat City owners association as outlined in the North Carolina Condominium Act.

72. Defendant breached the duty of care by failing to discharge its duties in good faith in relation to the following non-exhaustive facts:

    i. Failing to promptly redress the malfunctioning security cameras, even amid Plaintiff's voiced concerns.

    ii. Discriminatorily and selectively enforced association violations

    iii. At public owners meetings, admonishing Plaintiff Byrd for reporting continuing violations concerning both the owners association, and the handicapped parking spaces.

  iv. Publicly and falsely accusing Plaintiff of shutting down the entire camera network for the property.

  v. Allowing the continued harassment of Plaintiff by other residents with whom Defendant had been put on notice.

73. Defendant breached the duty of care by also failing to act with the diligence and care ordinary, prudent persons would exercise under similar circumstances. Defendant blatantly ignored requested from Plaintiff to: (1) fix security cameras, (2) address additional violations in the same manner, and (3) ignore the otherwise valid and reasonable requests from Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs respectfully prays that:

1. As to Count I of this Complaint, Plaintiffs have and recover of the Defendants compensatory damages in an amount in excess of $25,000.00.

2. As to Count II of this Complaint, Plaintiffs have and recover of the Defendant compensatory damages in an amount in excess of $25,000.00.

3. As to Count III of this Complaint, Plaintiffs have and recover of the Defendant compensatory damages in an amount in excess of $25,000.00.

4. As to all appropriate Counts of this Complaint, Plaintiffs have and recover reasonable attorney's fees from the Defendant.

5. As to all appropriate Counts of this Complaint, Plaintiffs be awarded pre-judgment and post-judgment interest.

6. That the costs of this action be taxed against the Defendant.

7. That this case have a **Trial By Jury** on all issues so triable.

8. For injunctive relief and such other and further relief as the Court may deem just and proper.

This the 1st day of June 2022.

                                                  **HAIRSTON LANE, PA**

                                                  **/s/ Bryan M. Sumner**
Bryan M. Sumner
N.C. Bar No: 55515
James E. Hairston, Jr.
N.C. Bar No: 19687
*Attorneys for Plaintiff*
434 Fayetteville Street, Suite 2350
Raleigh, North Carolina 27601
(919) 838-5295 Telephone
(888) 510-1160 Facsimile

12

## VERIFICATION

I, **Teywonia Byrd**, being duly sworn and states I am the Plaintiff in the foregoing action. I have read the forgoing Complaint and the allegations contained therein are true based upon my own memory, knowledge, and belief. The attorneys for Plaintiff have relied upon the information I have supplied regarding the foregoing allegations in this Complaint.

_____
Teywonia Byrd

North Carolina
County of Wake

Sworn to and subscribed before me this the 31st day of May, 2022 by **Teywonia Byrd**

_____, Notary Public
Hilda Rosa

My Commission Expires: 6/15/2025

(seal) HILDA ROSA NOTARY PUBLIC WAKE COUNTY, NC

13

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served the foregoing **COMPLAINT** via CM/ECF and addressed to the party below:

**Fat City Condominium Owners Association, Inc.**

Registered Address:
4530 Park Rd Suite 201
Charlotte, NC 28209

Mailing Address:
PO Box 11906
Charlotte, NC 28220

This the 1st day of June, 2022.

                                                  **HAIRSTON LANE, PA**

                                                  **/s/ Bryan M. Sumner**
Bryan M. Sumner
N.C. Bar No: 55515

James E. Hairston, Jr.
N.C. Bar No: 19687
*Attorneys for Plaintiff*
434 Fayetteville Street, Suite 2350
Raleigh, North Carolina 27601
(919) 838-5295 Telephone
(888) 510-1160 Facsimile