IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 3:22-CV-00249

| | |
|---|---|
| TEYWONIA BYRD,<br><br>   Plaintiff,<br><br> v.<br><br>FAT CITY CONDOMINIUM<br>OWNERS ASSOCIATION, INC.<br><br>   Defendant. | **DEFENDANT'S BRIEF IN<br>SUPPORT OF MOTION FOR<br>SUMMARY JUDGMENT** |

NOW COMES Defendant, Fat City Condominium Owners Association, Inc. ("Defendant"), and respectfully submits this Brief in support of its Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## NATURE OF THE MATTER BEFORE THE COURT

Plaintiff, Teywonia Byrd ("Plaintiff"), a resident of the Fat City condominiums, alleges she was discriminated against on the basis of her race in the enforcement of the Fat City condominium's rules, regulations, bylaws and declarations because she was fined for installing a Ring security camera in her unit. Additionally, Plaintiff alleges she was subjected to belittling and harassing behavior by several residents of the Fat City condominiums.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Fat City Condominium is a North Carolina nonprofit organization. The Declaration of Condominium, recorded on February 1, 2013, in Book 28038 at Page 267 of the Mecklenburg County Public Registry ("Declaration") is binding on the parties. The North Carolina Condominium Act, N.C.G.S. §47C-1-101 et seq. applies to Fat City.

Since June 2020, Plaintiff has been a resident of the Fat City condominiums. Doc. 1 at ¶¶ 1 & 9; *See* Deposition of Teywonia Byrd ("Byrd Dep.") at 8:3-8:6, attached hereto as Exhibit 1. Plaintiff was the Vice President of the Board from March 2021 through February 2022. Byrd Dep. at 8:21-22. The Fat City condominiums has 26 residential units. Doc. 1 at ¶ 10; Byrd Dep. at 15:10-15:16. Plaintiff, in addition to the other unit owners and occupants, is bound by the Declaration. Doc. 1 at ¶ 11.

Plaintiff alleges she was raped on or about July 17, 2020 by a known acquaintance while in her condominium unit. Byrd Dep. at 19:5-21:1. While the alleged assault is not the subject of this lawsuit, Plaintiff has attempted to tie in her 'need' for a camera to the assault. Despite knowing the identity of her assailant, and being aware that he entered her unit pursuant to her invitation prior to the alleged attack, Plaintiff alleges that there was insufficient evidence to criminally pursue charges against her assailant solely because the security cameras at the Fat

City condominiums were allegedly not functioning. Doc. 1 at ¶¶ 15-17; Byrd Dep. at 21:2-22:16. Plaintiff has claimed she needed and installed the Ring camera following, and as a result of, the alleged sexual assault and to assist her in feeling safe. She installed a Ring security camera in her unit, which was not part of approved modifications. Doc. 1 at ¶ 23; Byrd Dep. at 24:9-25:14.

The evidence is that Plaintiff had the camera installed without approval on June 18, 2020 *prior* to the alleged assault which contradicts her other statements, testimony and claims that the camera was installed after the alleged assault. Byrd Dep. at 122:6-9. *See* Plaintiff's email dated December 27, 2021 attached hereto as Exhibit 2 and the ARC form attached hereto as Exhibit 3. The unapproved camera was installed along with approved modifications.

Plaintiff acknowledges that the Declarations prohibited modifications to her unit without approval by the governing board of Defendant. Doc. 1 at ¶ 26; Byrd Dep. 25:20-26:6. Plaintiff acknowledges her request for retroactive approval of the already installed Ring security camera was denied. Doc. 1 at ¶ 33. Plaintiff was notified by the management company of the Fat City condominiums that she would be fined if her Ring security camera was not removed. Doc. 1 at ¶ 39; Byrd Dep. at 45:20-46:19. The only notice of violation Plaintiff has received is related to the Ring security camera. Byrd Dep. at 27:9-27:12. A Notice of Hearing was sent to Plaintiff on January 11, 2022 for a hearing to be held on January 27, 2022.

*See* the Notice of Hearing attached as Exhibit 4. A hearing was ultimately held on April 22, 2022. A Notice of Determination was sent to Plaintiff on May 5, 2022 notifying Plaintiff that a fine would be assessed in the amount of $100 per day if the Ring Camera was not removed within five days. Doc. 1 at ¶39; *See* the May 5, 2022 Notice of Determination attached hereto as Exhibit 5.

Plaintiff contends that other residents have violated the Declarations by having (a) umbrellas or lights on balconies; (b) having cones hanging from balconies; (c) displaying political or national flags; (d) having unapproved decorations or door mats; and (e) having unapproved color locks or keypads. Doc. 1 at ¶ 34. Plaintiff is not aware of any other resident having any type of personal security camera. Byrd Dep. at 129:3-129:11. After Plaintiff complained of the lack of enforcement as to the other residents' alleged violations of the Declarations, at which time she was the sitting Vice President of the Board who lived on the premises, violation warnings were sent to other residents. Doc. 1 at ¶ 38.

Plaintiff alleges "a resident harassed and belittled" her for her reports of discriminatory enforcement." Doc. 1 at ¶ 44. She claims the Association has a legal duty to prevent any/all alleged 'harassment' of Plaintiff by other residents, and that Defendant failed to perform that duty. However, when Plaintiff put the Board on notice of alleged specific behavior by a resident against her, the Board contacted their association attorney and a cease and desist letter was sent to the

resident Plaintiff reported. *See* redacted correspondence dated August 17, 2021 attached hereto as Exhibit 6.

Plaintiff alleges in her Complaint she was 'sexually harassed' by an alleged member of the board, when he, an African American married man, propositioned her to spend a weekend with him in Greensboro, North Carolina. Doc. 1 at ¶ 46; Byrd Dep. at 149:6-151:11. However, despite the allegation, Mr. Ndingwan was not a Board member when the invitation was put forth. *See* Deposition of Manny Ndingwan ("Ndingwan Dep.") at. 25:7-12, attached hereto as Exhibit 7. When asked if she was sexually harassed by this man, Plaintiff stated she was not certain if she was using the right word, but that this man wanted to be in a relationship with her, and her basis for the allegation of sexual harassment against a non-board member was that she was not comfortable with a married man expressing feelings of more than friendly love. Byrd Dep. 155:24-25–156:1-25–157:1-7.

Plaintiff alleges it was accurately reported during an association meeting that Plaintiff had reported other residents for parking in designated handicap spaces, (despite Plaintiff admittedly parking in handicapped spaces) and a resident harassed and belittled her concerning her reporting. Doc. 1 at ¶¶ 48-49 & 52; Byrd Dep. 27:18-19. Plaintiff alleges she was "subjected to increased torment and harassment by Defendant and other residents." Doc. 1 at ¶ 53. Finally, Plaintiff alleges a resident mailed her "a bag of gummy male genitalia and told [her] to 'eat

a bag of dicks.'" Doc. 1 at ¶ 59. The person who Plaintiff suspects of mailing her the gummies was never a board member. Byrd Dep. 64:19-66:21. Moreover, Plaintiff admits she never reached out to the Board with respect to that incident. Byrd Dep. 71:5-74:13. The identity of whomever sent the gummies has not been determined.

On June 1, 2022, Plaintiff filed the instant lawsuit in which she alleges three causes of action. First, she alleges violations of 42 U.S.C. § 1981. Plaintiff contends that Defendant discriminated against Plaintiff on the basis of her race by selectively enforcing the condominium rules and regulations. Doc. 1 at ¶¶ 62-65. Second, Plaintiff alleges intentional infliction of emotional distress. Plaintiff alleges, Defendant's conduct was "profusely extreme and outrageous." Doc. 1 at ¶¶ 66-69. Third, Plaintiff alleges breach of fiduciary duty because of the alleged (a) failure to promptly fix malfunctioning cameras in response to Plaintiff's expressed concerns; (b) discriminatorily and selectively enforcing violations of the Declarations; (c) admonishing Plaintiff for reporting violations of the Declarations and reporting illegal parking; (d) accusing Plaintiff of shutting down the camera network for the property; and (e) allowing continued harassment of Plaintiff by other residents. Doc. 1 at ¶¶ 70-73.

Plaintiff alleges she suffered emotional damages caused by the actions of Defendant beginning toward the end of 2021. Byrd Dep. 171:1-171:9. She

testified that those emotional damages occurred primarily due to two individuals, one of whom was never on the board with the Defendant, and the other of whom was only on the board for a short period of time after Plaintiff first moved in and was not on the board at the end of 2021 or later. Byrd Dep. at 168:19-169:4; 64:19-66:21; 129:18-129:23. Plaintiff has failed to produce any documents regarding any specifically alleged damages.

## STATEMENT OF QUESTIONS PRESENTED

1.   Is Defendant entitled to Summary Judgment as to Plaintiff's claim of violation of 42 U.S.C. § 1981?

2.   Is Defendant entitled to Summary Judgment as to Plaintiff's claim of intentional infliction of emotional distress?

3.   Is Defendant entitled to Summary Judgment as to Plaintiff's claim of breach of fiduciary duty?

4.   Is Defendant entitled to Summary Judgment on Defendant's Counterclaims?

## LEGAL ARGUMENT

Defendant is entitled to summary judgment as to all three of Plaintiff's claims as the undisputed evidence demonstrates she cannot satisfy one or more required element of each claim.

## I.   DEFENDANT IS ENTITLED TO SUMMARY JUDGEMENT ON ALL CLAIMS IN PLAINTIFF'S COMPLAINT

**A.    Defendant Is Entitled To Summary Judgment On Plaintiff's Claim For Violation Of 42 U.S.C. § 1981.**

To prevail on a violation of 42 U.S.C. § 1981, Plaintiff must demonstrate purposeful discrimination. *See General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1992). Plaintiff must show that the allegedly discriminatory action would not have occurred "but for" Plaintiff's race. *See Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1014-1015, 206 L. Ed. 2d 356, 363 (2020) (in an action under § 1981 "a plaintiff bears the burden of showing that race was a but-for cause of its injury.").

Here, Plaintiff utterly fails to demonstrate that the notices of violation and subsequent fines she received for having the Ring security camera would not have occurred "but for" her race. *See Roberson v. Bowie State University*, 899 F. Supp. 235, 238 (D. Md. 1995) ("bare allegations that negative consequences occurred because one is black…do not satisfy the level of pleadings required to state a claim of intentional racial discrimination."). Plaintiff's evidence of discrimination amounts to nothing more than her suspicions. There is no evidence that any other resident, let alone a resident of a different race, was allowed to have any type of security camera. Plaintiff admits having a security camera without approval violates the Declarations and that she did not have approval for a security camera.

8

It appears Plaintiff's sole evidence is the suggestion that that other residents violated the Declarations and were not served with notices of violations or punished until she complained. Even accepting this as true, the alleged violations by the other residents are distinct in that they do not involve surreptitiously recording other residents. Moreover, even if they were similar, many of those violations by other residents occurred while Plaintiff served as Vice President of the Board and failed herself to report them. Plaintiff fails to identify the racial background of the other alleged violators to demonstrate only residents of certain racial backgrounds were targeted. Finally, Plaintiff acknowledges that the other violators received warnings related to their alleged violations after she complained.

Put simply, Plaintiff fails to meet her burden of showing that her race was a "but for" cause of the fines she received. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for violation of 42 U.S.C. § 1981.

Additionally, to the extent Plaintiff points to the alleged acts of various residents, as explained in Section B.2. below, the acts of any individual resident is not imputed to Defendant. Accordingly, even if the act of any resident were racially motivated, for which there is scant evidence, it would not justify a § 1981 claim against Defendant.

**B.    Defendant Is Entitled To Summary Judgment On Plaintiff's Claim For Intentional Infliction Of Emotional Distress.**

Under North Carolina law, the essential elements of a claim for intentional infliction of emotional distress are "(1) extreme and outrageous conduct by the [defendant]; (2) which is intended to and does in fact cause (3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) *citing Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). "Whether or not conduct constitutes extreme and outrageous behavior is initially a question of law for the court." *Simmons v. Chemol Corp.*, 137 N.C. App. 319, 325, 528 S.E.2d 368, 371 (2000) (citations omitted). "To establish the essential element of extreme and outrageous conduct, the conduct must go beyond all possible bounds of decency and 'be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id. quoting Wagoner v. Elkin City Schools Bd. of Educ.*, 113 N.C. App. 579, 586, 440 S.E.2d 119, 123 (1994). "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" will not be found to constitute extreme and outrageous conduct. *See Jonson v. Bollinger*, 86 N.C. App. 1, 6, 356 S.E.2d 378, 382 (1987) *quoting Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985) (IIED claim properly dismissed where defendant approached plaintiff in angry and threatening manner while carrying pistol, shook his hand in plaintiff's face, and said in loud voice, "I will get you"); *see also Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349, 355, 595 S.E.2d 778, 783 (2004) (affirming summary judgment on IIED claim by supervisor against

former employee where "[the supervisor] confronted [the employee], [and] he [responded by] threaten[ing] to make accusations against her, yelled at her, walked off his assignment and then, when he returned, threw a package of papers at [the supervisor]" and "[t]he next day [the employee] filed a complaint of sexual harassment against [the supervisor]"); *Guthrie v. Conroy*, 152 N.C. App. 15, 24, 567 S.E.2d 403, 410 (2002) (affirming summary judgment in favor of defendant on plaintiff's IIED claim where defendant "(1) held plaintiff from behind, and touched or rubbed her neck and shoulders; (2) 'irritated' her by placing a lampshade on her head when she fell asleep with her head on her desk; (3) threw potting soil and water on plaintiff while she was planting flowers at work, remarking when he threw a cup of water on plaintiff that he'd 'always wanted to see [her] in a wet T shirt'; and (4) placed a Styrofoam 'peanut' and other small objects between the legs of a 'naked man' statuette that plaintiff displayed on her windowsill at work and asked her 'how she liked it' with the addition"); *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493-94, 340 S.E.2d 116, 122-23 (affirming summary judgment for defendants as to IIED claims where allegations involved screaming and shouting, name-calling, throwing menus, and various hostile acts toward pregnant employee), *disc. review denied*, 317 N.C. 334, 346 S.E.2d 140 (1986).

>    1. **Plaintiff did not experience extreme and outrageous conduct.**

Here, Plaintiff fails to demonstrate the conduct she experienced goes beyond all possible bounds of decency and is considered atrocious and utterly intolerable in a civilized community. At most Plaintiff has alleged: (1) some residents vaguely and without specifics "harassed and belittled" her for reporting alleged discriminatory enforcement and illegal parking; (2) a married board member propositioned her to spend a weekend with him, and (3) a unknown individual mailed her a bag of gummy male genitalia with a crude note. While these alleged acts may be in bad taste, they are, at most, "[m]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," and are not beyond all possible bounds of decency.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

### 2. Defendant is not liable for the conduct Plaintiff experienced

Additionally, even if the Court were to find the acts Plaintiff alleges constitute "extreme and outrageous conduct," they do not support a claim against Defendant. All, or certainly most, of the allegedly infringing conduct alleged by Plaintiff was done by individuals, often residents. Moreover, the primary bad actors in Plaintiff's mind were not on the Board of Defendant when Plaintiff suffered her alleged emotional damages. Regardless, Plaintiff cannot point to any

evidence that Defendant authorized these residents to act on its behalf or had sufficient control over the actions of these residents.

"Two essentials are present in a principal-agent relationship: (1) Authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent. Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Colony Assocs. v. Fred L. Clapp & Co.*, 60 N.C. App. 634, 637-638, 300 S.E.2d 37, 39 (1983) (citations omitted).

Here, the residents did not have express or implied authority to act for Defendant. Further, the Defendant did not have authority over the residents. Accordingly, there was no principal-agent relationship upon which Plaintiff can seek legal liability against Defendant.

Moreover, even if the individuals who engaged in the alleged offending conduct were considered agents of Defendant, Defendant is not liable for their torts. "As a general rule, liability of a principal for the torts of his agent may arise in three situations: (1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business; or (3) when the agent's act is ratified by the principal." *Hogan v. Forsyth Country Club Co.*, 79 N.C. App.

483, 491, 340 S.E.2d 116, 121 (1986) *citing Snow v. DeButts*, 212 N.C. 120, 193 S.E. 224 (1937).

Here there is no evidence that the Board of Directors for the Defendant, *which included Plaintiff*, authorized the acts of the offending individuals. There is also no evidence the acts by the alleged offending individuals were in furtherance of Defendant's business as an owners' association. Finally, there is no evidence that Defendant ratified any act by any of the offending individuals.

Accordingly, even if the conduct Plaintiff alleges she experienced was "extreme and outrageous," Defendant is not liable for such conduct. Therefore, Defendant is entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

**C.    Defendant Is Entitled To Summary Judgment On Plaintiff's Claim For Breach Of Fiduciary Duty.**

A claim for breach of fiduciary duty requires a plaintiff to show that "(1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to the plaintiff." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 339, 828 S.E.2d 467 (2019).

**1.    Defendant and Plaintiff did not have a fiduciary relationship**

"For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citations omitted). There are two types of fiduciary relationships: (1) those that arise from legal relations such as attorney and client, broker and client…, partners, principal and agent, trustee and cestui que trust, and (2) those that exist as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other. *See S.N.R. Mgmt Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008). The North Carolina Condominium Act makes clear that officers and members of the board owe fiduciary duties to the association and the unit owners. *See* N.C. Gen. Stat. § 47C-3-103(a). However, there is nothing to suggest that the association itself owes any fiduciary duties to the unit owners. *See id.*; *see also Howe v. Links Club Condo. Ass'n*, 263 N.C. App. 130, 148, 823 S.E.2d 439, 453-54 (2018) (the Court held an association owed a fiduciary duty for the limited purpose of transactions such as a unit sale).

Accordingly, as Defendant does not owe Plaintiff any fiduciary duties, it cannot breach any such duties. Thus, Defendant is entitled to summary judgment on Plaintiff's claim for breach of fiduciary duty.

> **2. Even if the law imposes a fiduciary duty on Defendant, it was not breached in any way proximately causing damage to Plaintiff.**

15

Plaintiff has alleged breaches of fiduciary duties by Defendant due to the alleged (a) failure to promptly fix the alleged malfunctioning cameras in response to Plaintiff's expressed concerns; (b) discriminatorily and selectively enforcing violations of the Declarations; (c) admonishing Plaintiff for reporting violations of the Declarations and reporting illegal parking; (d) accusing Plaintiff of shutting down the camera network for the property; and (e) allowing continued harassment of Plaintiff by other residents. As to (a), (c), and (d). Plaintiff fails to put forth any evidence that such actions proximately caused her any damages.

As to (b), as noted in Section A above, Plaintiff cannot maintain a claim based on the alleged selective enforcement of violations of the Declarations. Plaintiff was on the Board as Vice President March 2021 through February 2022 and lived at the community and admittedly failed to report any violations to the Management Company and/or correct any alleged selective enforcement. Further, the undisputed evidence is that the Ring camera was a violation of the bylaws. Plaintiff was not permitted to have a security camera, Plaintiff knew she was not permitted to have security-type camera, no other resident was allowed to have a security-type camera or anything similar and no other resident had a security-type camera or anything similar. Thus, the undisputed evidence fails to demonstrate selective enforcement existed or proximately caused Plaintiff any damages.

As to (e), Plaintiff fails to articulate how it was Defendant's legal duty to prevent alleged harassment of Plaintiff by other residents. As noted, the alleged harassment was not at the direction of, or ratified by, Defendant. Moreover, she fails to demonstrate how, as a practical matter, Defendant failed to perform that duty. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for breach of fiduciary duty.

## II. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIMS

### A. The Parties Are Bound by the Terms of the Declaration

The Declaration governs the rights and responsibilities of the parties. Article I, Section 6 defines Common Elements to "refer to all portions of the Condominium other than the Units and the Limited Common Elements." *See* the Declaration attached hereto as Exhibit 8. The term "Unit" is defined in Article I, Section 21 to include the following:

> the unfinished perimeter walls, floors and ceilings as shown on the Plat and Plans. All interior surfacing materials, including all lath, furring, wallboard, plasterboard, plaster, paneling, tiles, wallpaper, paint, finished flooring and any other materials constituting any part of the finished surfaces of the interior walls, floors or ceilings of each Unit shall be a part of that respective Unit. In addition, all spaces, interior partitions, fixtures, appliances, cabinets and other such facilities or improvements lying completely within the boundaries of a Unit and serving only such Unit shall be a part of such Unit.

*See* Exhibit 8 at 3. The exterior doors are not part of the Unit. Instead, the exterior doors are considered Limited Common Elements. "Any entryways and all exterior

doors, windows, balconies, decks or other fixtures designed to serve a single Unit but located outside the Unit's boundaries are Limited Common Elements allocated exclusively to that Unit. *Id.* at 5, Article III, Section 2; *see also* Article I, Section 13 (Definition of Limited Common Elements).

Article VII, Section 1 of the Declaration prohibits modifications of Limited Common Elements without ARC approval. *Id.* at 8. Article 1, Section 19 of the Declaration gives the Board of Directors absolute authority to establish rules and regulations governing the use of the Common Elements. *Id.* at 3. Article IV, Section 3(a) of the Declaration states that every Owner has the right and easement of enjoyment of the Common Elements and that the Board of Directors has the right to adopt rules and regulations as may be needed to regulate the use and enjoyment of the Common Elements. *Id.* at 6. Article VIII, Section 2 of the Declaration states that the Common Elements shall not be used for any noxious or offensive uses, which includes a use that would constitute a nuisance. *Id.* at 10. Article VIII, Section 13 of the Declaration prohibits a disturbance that shall unreasonably disturb other owners. *Id.* at 15.

**B.  Plaintiff Installed a Ring Camera on Her Exterior Door For the Purpose of Recording the Common Area, Without ARC Approval, Thereby Breaching the Terms and Conditions of the Declaration**

Plaintiff had a Ring Video camera installed on her exterior door without approval on June 18, 2020. Byrd Dep. at 122:6-9. *See* Exhibits 2 and 3.  When it

18

came to light that Plaintiff had installed the camera, on December 13, 2021, Plaintiff submitted an ARC application requesting approval of her Ring Camera. *See* ARC Form dated December 13, 2021 attached hereto as Exhibit 9. The ARC request was denied on December 16, 2021. *Id.*

The North Carolina courts interpret language in the Declaration using ordinary contract principals. *Armstrong v. Ledges Homeowners Ass'n, Inc.*, 360 N.C. 547, 555, 633 S.E.2d 78, 85 (2006). "When the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of constructions, cannot reject what the parties inserted or insert what the parties elected to omit." *Gehrke v. Gates at Quail Hallow Homeowners Association*, 881 S.E.2d 643 (N.C. Ct. App. 2022); (*quoting Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 719, 127 S.E.2d 539, 541 (1962).

By installing the Ring Video Camera without approval to record the common elements of the condominium, Plaintiff has breached the terms and conditions of the Declaration. Plaintiff's continued failure to remove the Ring Camera constitutes ongoing breaches of contract.

### C. The Defendant Has Sole Authority to Control the Activity and Use of the Common Areas

The hallways of Fat City constitute Common Areas. There is no dispute that the Defendant has the sole authority and control over the Common Areas of the Condominium. *See Carolina Marlin Club Marina Ass'n v. Preddy*, 238 N.C. App.

215, 225, 767 S.E.2d 604, 610-11 (2014 (holding that common areas are property subject to the control of the Association). The North Carolina Condominium Act specifically states that: " Unless the Declaration provides to the contrary, the Association, even if unincorporated may do all of the following:  . . . (6) regulate the use, maintenance, repair, replacement and modification of the common elements; . . . (9) grant easements, leases, licenses and concessions through or over the common elements."  N.C.G.S. §47C-3-102(a)(6) and (9). In this instance, the Declaration specifically reserves the right to the Defendant to regulate the use and enjoyment of the Common Elements and to adopt rules and regulations related to the same.

The Board of Directors made the decision to maintain security cameras in the hallways for the protection and security of its Owners. *See* Byrd Dep. at 9:21-25; 10:14-25.  The security cameras were accessed through the electrical room. *See* Byrd Dep. at 103:14. The Board of Directors passed specific rules and regulations related to the Security Cameras. *See* Ndingwan Dep. at 18:11-25; 19:10-25, Security Camera Policy, attached hereto as Exhibit 10. Plaintiff admits monitoring residents through the Defendant's security cameras while she was a member of Defendant's Board of Directors. *See* Byrd Dep. at 99:20-25; 100 and 101.  As a result, Plaintiff's access to the security cameras was revoked. *See* Byrd Dep. at 101:1-3.  The Defendant has a video of Plaintiff entering the electrical room

immediately prior to the security cameras becoming disabled. *See* Byrd Dep. at 102:23-25; 103:1-25. Although Plaintiff denies disabling the camera, the video immediately shuts down upon Plaintiff entering the room and Plaintiff admits that she is the person on the video. *See* Byrd Dep. at 103:3. Plaintiff admitted that she would "often" go into the camera room. *See* Byrd Dep. at 103:14.

### D. The ARC Has Discretion In Whether To Approve A Modification To A Limited Common Element And There Is No Evidence That The Defendant Acted Arbitrarily

In this instance, no other Owner has a Ring Camera on their exterior door. The Defendant was also aware of Plaintiff's ability to monitor residents through Defendant's security camera system.

The Declaration requires that all modifications of exterior doors must be approved by the ARC. Plaintiff has not provided any evidence that the Defendant has acted arbitrarily in denying her application. When interpreting restrictive covenants that require submission of a request prior to construction, North Carolina courts have held that such clauses,

> even if vesting the approving authority with broad discretionary power are *valid and enforceable* so long as the authority to consent is exercised *reasonably and in good faith*. Importantly though, the exercise of the authority to approve the house plans *cannot be arbitrary*.

*Pendleton Lake Homeowners Ass'n, Inc. v. Carnell*, 2006 N.C. App. LEXIS 242, at *5-6 (2006) (emphasis added in *Pendleton)* (internal quotation marks and citations omitted); *See also Raintree Homeowners Ass'n, Inc. v. Bleimann*, 342 N.C. 159,

164, 463 S.E.2d 72, 75 (1995) (holding a committee acted reasonably where defendants "produced no evidence that the ARC acted arbitrarily or in bad faith when reviewing defendants' application or when making its decision"); *Smith v. Butler Mtn. Estates Property Owners Ass'n*, 90 N.C. App. 40, 48, 367 S.E.2d 401, 407 (1988); *Boiling Spring Lakes Div. of Reeves Telecom Corp. v. Coastal Services Corp.*, 27 N.C. App. 191, 195, 218 S.E.2d 476, 478 (1975) (noting that decisions that are arbitrary, capricious, or made in bad faith are not found based on disagreement as to aesthetic looks but rather on whether the ARC made appropriate considerations when exercising its approval authority).

E.   The *Raintree* court recognized that a review committee can reasonably consider how covenants have been applied in previous evaluations and in consideration of the overall scheme of development. *Raintree,* 342 N.C. at 165, 463 S.E.2d at 75. The Court held the Architectural Review Committee's denial of an application for vinyl siding was reasonable and in good faith because it was consistent with past denials. Based on the information available to the Defendant at the time the ARC application was denied, the Defendant did not act arbitrarily as a matter of law. **The Defendant Imposed Fines Consistent with the North Carolina Condominium Act**

Under N.C.G.S. 47C-3-102, the Defendant is authorized to impose fines for violations of the Declaration. N.C.G.S. §47C-3-107.1 states:

Unless a specific procedure for the imposition of fines or suspension of condominium privileges or services is provided for in the declaration, a hearing shall be held before the executive board or an adjudicatory panel appointed by the executive board to determine if any unit owner should be fined or if condominium privileges or services should be suspended pursuant to the powers granted to the association in G.S. 47C-3-102(11). . . .. The unit owner charged shall

be given notice of the charge, opportunity to be heard and to present evidence, and notice of the decision. If it is decided that a fine should be imposed, a fine not to exceed one hundred dollars ($100.00) may be imposed for the violation and without further hearing, for each day more than five days after the decision that the violation occurs.

N.C.G.S. §47C-3-107.1.

Pursuant to the provisions of the Declaration and N.C.G.S. §47C-3-107.1, on January 11, 2022, the Defendant sent the Plaintiff a notice of hearing to determine whether Plaintiff was in violation of the covenants, restrictions, or provisions of the Declaration and whether penalties permitted by law should be imposed due to Plaintiff's installation of the Ring Video Camera without approval and failure to remove it. The original hearing was continued and a hearing was ultimately held on April 22, 2022. Plaintiff attended the April 22, 2022 hearing. The Board notified the Plaintiff, in writing, on May 5, 2022, that Plaintiff must remove the ring camera on or before May 10, 2022 or fines in the amount of $100 per day would be imposed. Because the Plaintiff is in violation of the Declaration and the terms of the statute were followed, the fines imposed against Plaintiff are valid and enforceable.

## CONCLUSION

For the above stated reasons, Defendant respectfully request that the Court grant it summary judgment as to any and all claims asserted by Plaintiff, and enter

judgment against Plaintiff for Breach of Contract and declare that the fines assessed against the Plaintiff are valid and enforceable.

This the 6th day of July, 2023.

/s/ Meredith Cushing_____
Meredith Cushing (Bar No: 36217)
Jeffrey B. Kuykendal (Bar No: 37693)
McAngus Goudelock & Courie
Post Office Box 30307
Charlotte, North Carolina 28230
Phone: (704) 405-4638
Fax: (704) 643-2376
Email: meredith.cushing@mgclaw.com
Email: jeffrey.kuykendal@mgclaw.com
Attorneys for Fat City Condominium
Owners Association, Inc.

/s/ Michelle Massingale Dressler
Michelle Massingale Dressler
N.C. Bar No.: 29628
Brett E. Dressler
N.C. Bar No.: 24516
Sellers, Ayers, Dortch and Lyon, P.A.
301 South McDowell Street, Ste 410
Charlotte, North Carolina 28204
Phone: (704) 377-5050
Fax: (704) 339-0712
Email:mpmdressler@sellersayers.com
Email: bdressler@sellersayers.com
Attorneys for Counterclaimant

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all known counsel of record.

/s/ Meredith Cushing_____
MEREDITH CUSHING