# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CASE NO. 3:22-CV-249-MOC-DCK

| | |
|---|---|
| TEYWONIA BYRD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| FAT CITY CONDOMINIUM OWNERS ) | |
| ASSOCIATION, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion To Compel Discovery" (Document No. 27) filed July 5, 2023. This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and immediate review is appropriate. Having carefully considered the motion and the record, the undersigned will grant the motion with modification in part and deny the motion in part.

## BACKGROUND

Plaintiff Teywonia Byrd ("Byrd" or "Plaintiff") initiated this action with the filing of a "Complaint" (Document No. 1) against Defendant Fat City Condominium Owners Association, Inc. ("Fat City" or "Defendant") on June 1, 2022. Plaintiff alleges that she resides in a condo at Fat City Condominiums, and from the time that she moved to the complex, Defendant has discriminated against her on the basis of her race as an African-American woman. (Document No. 1, p. 2). Plaintiff contends that as an owner of one of the condominiums, she and Defendant are contractually bound by the homeowner's association's ("HOA") covenants and regulations. Id. at pp. 2-3. Furthermore, she alleges that she was elected to serve as a board member (Vice President) of the homeowner's association. Id. at p. 3.

The Complaint alleges that Plaintiff "suffered a traumatic experience involving a former resident," resulting "in Plaintiff attempting to press criminal charges against the resident." Id. However, charges could not be brought "because Defendant's security cameras did not capture video of the resident" because they "were not kept in a functioning condition," despite Plaintiff's repeated attempts to persuade Defendant to repair them. Id. at pp. 3-4. Due to the security cameras not working, Plaintiff alleges that she "felt extremely unsafe in her home," and so she "installed a Ring Peephole camera so she could monitor who entered or attempted to enter her residence." Id. at p. 4. In order to make a modification to a unit, a form needed to be submitted and approved by the homeowner's association board. Id. at p. 5. Plaintiff contends that she was encouraged to submit the form because of her installation of the camera, and that her request "was subsequently denied despite Defendant's knowledge of the non-working security cameras" and despite Plaintiff's contention that "none of the residents [who made various] modifications to their units submitted to Fat City [a] form to be approved." Id.

After Defendant's denial of her form requesting to install a camera, "Plaintiff was notified by the Defendant's management company [that] she would be fined $100 and $100 per day after 5 days if the violation was left uncured." Id. at p. 6. According to the Complaint, "other residents in violation [of the HOA rules and regulations] have not been subjected to such a fine for their respective violations." Id.

Plaintiff further alleges that she "was retaliated against" by residents who had "previously made racist and[/] or derogatory remarks regarding non-white persons" for reporting the "illegal use of the handicap parking spaces" to the Charlotte-Mecklenburg Police Department. Id. at pp. 7-8. Additionally, she claims that she was "sexually harassed by board member Manny Ndingwan." Id. at p. 7. As a result of the alleged retaliation and selective enforcement of HOA

2

rules by Defendant, Plaintiff contends that she "developed extreme and acute anxiety resulting in a medical diagnosis" and has had to "temporarily relocate to a safer, more aware community where her safety concerns will not be ignored." Id. at pp. 8-9.

Plaintiff brings three claims against Defendant: (1) for race discrimination in violation of 42 U.S.C. § 1981; (2) for intentional infliction of emotional distress; and (3) for breach of fiduciary duty. See id. Defendant filed "Fat City Condominium Owners Association's Motion To Dismiss, Answer To Complaint And Counterclaim" (Document No. 8) on September 6, 2022. Defendant included counterclaims for (1) breach of contract and (2) declaratory judgment. "Plaintiff's Reply To The Counterclaim" (Document No. 13) was filed October 14, 2022. Additionally, "Fat City Condominium Owners Association, Inc.'s Motion For Summary Judgment" (Document No. 28) was filed July 6, 2023 and is ripe for review.

Plaintiff filed her "Motion To Compel Discovery" (Document No. 27) on July 5, 2023. "Defendant's Opposition To Plaintiff's Motion To Compel Discovery" (Document No. 31) was filed July 18, 2023. Plaintiff did not file a reply and the time to do so has lapsed. See LCvR 7.1(e). The motion is now ripe for review and disposition.

**STANDARD OF REVIEW**

Rule 26 of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

3

Fed.R.Civ.P. 26(b)(1). The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1945). However, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed.R.Civ.P. 26(c)(1).

Whether to grant or deny a motion to compel is generally left within a district court's broad discretion. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (denial of motions to compel reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting District Court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

## DISCUSSION

By the instant motion, Plaintiff seeks two categories of documents: (1) "text messages described during the deposition of Manny Ndingwan"; and (2) "financial information with the exception of the accounting ledger for Plaintiff's fines." (Document No. 27, p. 2). The undersigned will address each of these categories of documents in turn.

**A. Text Messages**

The first category of documents that Plaintiff seeks to compel includes "text messages between Plaintiff and Mr. Ndingwan." Id. Plaintiff states that "Mr. Ndingwan is a former member of the board for Defendant during which time he was engaged in personal and professional communications with Plaintiff." Id. According to the instant motion, "[d]uring Plaintiff's deposition of Mr. Ndingwan, he stated he had retained possession of all of the text messages between himself and Plaintiff." Id. Plaintiff argues that these text messages "are relevant to the

4

claims asserted because it is believed the messages establish a *quid pro quo* between Plaintiff and Mr. Ndingwan as it relates to her treatment by Defendant." Id.

The Complaint indicates that "Plaintiff was sexually harassed by board member Manny Ndingwan [] when he sexually propositioned her to come spend a weekend with him at his condominium located in Greensboro, North Carolina." (Document No. 1, p. 7). Plaintiff apparently "refused due to the fact Mr. Ndingwan is married." Id. Plaintiff alleges that "denial of Manny's proposition to Plaintiff caused him to further treat Plaintiff adversely by allowing the abuse of his power and position as a board member." Id.

The undersigned concludes that Plaintiff's motion to compel Defendant to produce these text messages should be denied. Although the discovery rules are broad, what Plaintiff seeks is to compel Defendant to produce a third-party's text messages. Mr. Ndingwan is not a named Defendant, and Plaintiff presumably possesses these text messages in her possession, as Defendant rightly points out. See (Document 31, p. 6). Defendant also contends that "Mr. Ndingwan was not a board member when he sent and received the subject text messages with Plaintiff." Id. Thus, compelling Defendant to produce text messages sent by a third party related to a personal matter does not come within the realm of discoverable information from the HOA in a discrimination case. Furthermore, Plaintiff's argument for why Defendant should be compelled to produce these text messages that "it is believed the messages establish a *quid pro quo* between Plaintiff and Mr. Ndingwan as it relates to her treatment by Defendant" is not sufficiently clear so as to warrant a finding of relevance of the text messages to Plaintiff's claims of discriminatory treatment by Defendant. The undersigned will thus deny Plaintiff's motion to compel the text messages between Mr. Ndingwan and Plaintiff.

**B. Financial Information**

The second category of documents that Plaintiff seeks includes "all comprehensive financial reports, summaries, or other documentation, including but not limited to budgets, expenditures, receipts, reimbursements, and the like, for Fat City Condominium Owners Association." (Document No. 31, p. 7). Plaintiff suggests that Defendant produced some records responsive to this request, including "the financial accounting of the fines accruing against her and the same was produced." (Document No. 27, p. 3). However, Plaintiff asserts that she is entitled to *all* financial information in Defendant's possession, as described above. She argues that "[t]he information sought is relevant to Plaintiff's treatment by Defendant" because she believes that "no unit owners other than Plaintiff were fined in the same manner." Id. Without the financial information that she seeks, she argues, she will be "prejudiced by being unable to compare herself to other unit owners with existing violations." Id.

The undersigned agrees to some extent with Plaintiff's arguments. Plaintiff asserts that "the fines levied against Plaintiff are in excess of $40,000." Id. at p. 4. And, in her Complaint, she contends that "Defendant did not enforce the contractual obligations found in the rules, restrictions, and[/] or covenants of Fat City in equal or equitable fashion as afforded to white unit owners." (Document No. 1, p. 9). Financial records reflecting fines and/or costs associated with other residents' violations of Defendant's rules and regulations are surely relevant to Plaintiff's claims of race discrimination – such information is necessary to prove that Plaintiff was singled out because of her race. Nonetheless, Plaintiff's request as worded is overly broad. Requiring Defendant to disclose every financial record in its possession is undoubtedly too broad a request – some of the responsive records to such a request would have no relevance whatsoever to a discrimination lawsuit. The undersigned encourages counsel to confer with one another to revise the scope of the request – Plaintiff is no doubt entitled to some additional financial documents

from Defendant in order to prove her discrimination case. Defendants should produce financial documents to Plaintiff that reflect fines or costs associated with other residents' violations of HOA rules and regulations that will allow Plaintiff to compare her own situation to that of others that may be of the same or other races. Thus, the undersigned will grant Plaintiff's motion to compel on this category of documents with modification.

**IT IS, THEREFORE, ORDERED** that Plaintiff's "Motion To Compel Discovery" (Document No. 27) is **GRANTED with modification in part and DENIED in part**, as described herein.

**SO ORDERED**.

Signed: September 22, 2023

David C. Keesler
United States Magistrate Judge