UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-249-MOC-DCK

| | |
|---|---|
| TEYWONIA BYRD,<br><br>　　　　Plaintiff,<br><br>v.<br><br>FAT CITY CONDOMINIUM<br>OWNERS ASSOCIATION, INC.,<br><br>　　　　Defendant. | ORDER |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant Fat City Condominium Owners Association, Inc. (Doc. No. 28).

### I.　BACKGROUND

### A.　Procedural Background

Plaintiff, a Fat City Condominium resident, brings this action under 42 U.S.C. § 1981, alleging that Defendant Fat City Condominium Owners Association, Inc. has unequally, arbitrarily, and capriciously enforced certain condominium declarations, rules, and regulations against Plaintiff, in violation of her rights guaranteed by federal law. Specifically, Plaintiff alleges she suffered discriminatory enforcement of restrictive provisions controlling alterations to limited common elements. According to Plaintiff, Defendant only began enforcing certain restrictive provisions after Defendant's Board of Directors ("Fat City Board" or "Defendant Board") singled out Plaintiff for selective enforcement. Plaintiff Byrd claims that Defendant Board did not take enforcement action against several violations, including exterior door

1

modifications, committed by other residents. Nevertheless, Plaintiff was, and continues to be, fined for making what she claims was a similar modification. Plaintiff alleges that Defendant's selective enforcement of the condominium declaration's restrictive provisions constitutes unlawful discrimination.

Plaintiff's Complaint states three causes of action: (1) race discrimination in violation of to 42 U.S.C. § 1981; (2) intentional infliction of emotional distress under North Carolina law; and (3) breach of fiduciary duty under North Carolina law. Defendant brings counterclaims for breach of contract and declaratory judgment, seeking an order from the Court requiring Plaintiff to pay the fines accrued and attorney's fees.

On July 6, 2023, Defendant filed the pending summary judgment motion. (Doc. No. 28). Plaintiff filed a response on August 18, 2023, Defendant filed a Reply on September 7, 2023, and the Court held a hearing on October 23, 2023. (Doc. Nos. 35, 38). This matter is ripe for disposition.

### B. Factual Background

#### i. Summary

Defendant Fat City Condominium Owners Association ("Fat City") is a non-profit corporation, operating under North Carolina Law. A Declaration of Condominium recorded on February 1, 2013, in Book 28038 at Page 267 of the Mecklenburg County Public Registry, governs Fat City and its residents.[1] All unit owners and occupants at Fat City are bound by the Declaration of Condominium ("Declaration"), which prohibits modifications to the condominium units without submission in writing of an architectural ("ARC") form to the board.

---

[1] The North Carolina Condominium Act, N.C.G.S. § 47C-1-101 et. seq. applies to Fat City as a duly organized condominium association. N.C.G.S. § 47C-1-101.

(Ex. 9). Article XI, Section 11.1(c) of the Declaration states, "[a]ll rules and regulations shall be equally and uniformly applicable to all Owners and occupants." Violations of the Declaration result in fines assessed against the condominium owners.

Plaintiff Teywonia Byrd, an African American woman and Fat City condominium owner, alleges that Defendant racially discriminated against her by fining Byrd thousands of dollars for installing a Ring peephole camera on her condominium door. (Byrd Dep. 118:25–119:15; 122:15–123:25). Plaintiff maintains that that Defendant does not similarly enforce the condominium declarations against white residents. Plaintiff contends that other units' violations of the Declaration concerning limited common elements went unpunished. (Byrd Dep. 124:1–124:18). Plaintiff claims to have witnessed additional violations of the Declaration including: (i) umbrellas and lights on balconies; (ii) cones hanging from balconies; (iii) displays of political and/or national flags; (iv) unapproved decorations and/or door mats; and (v) unapproved color locks; keypad/digital locks. (Compl. ¶ 34).

Plaintiff also alleges that other Fat City residents harassed her and otherwise intentionally caused her to suffer emotional distress. Based on her factual allegations, Plaintiff brings claims against Fat City for Section 1981 race discrimination, intentional infliction of emotional distress, and breach of fiduciary duty. Defendant denies Plaintiff's claims and has counterclaimed for breach of contract and a declaratory judgment enforcing the fines that Defendant has imposed against Plaintiff for violating the Declarations.

### ii. Plaintiff's Evidence on Summary Judgment

On or around June 2020, Plaintiff bought a condo at Fat City as her primary residence. (Byrd Dep. at 8:3–6). Fat City Condominiums has 26 residential units. (Id. at 15:10–16). Plaintiff is only one of two African Americans living at Fat City.

Plaintiff felt unsafe in her condominium because there were numerous homeless people in the area. (Id. at 9–10). Consequently, Plaintiff had a Ring peephole camera installed on her front door on or around June 18, 2020. (Id. at 122:6–9). The camera was always visible and never hidden to passers-by. (Id. at 193:21–194:1). Plaintiff claims she had no reason to believe installing a Ring camera on her front door was prohibited because other residents had also altered the exterior of their doors. (Id. at 25:20–26:6).

Plaintiff alleges that on July 17, 2020, a former Fat City resident raped her inside her condo. (Byrd Dep. at 19:5–19:17). Plaintiff attempted to press criminal charges, but there was insufficient evidence, as Defendant's security cameras either did not capture video of the resident entering or exiting her home, or the captured video had been recorded over. (Id. at 10:21–11:7; 18:1–8; 22:6–22:16).

Plaintiff was elected as Vice President of the Board in March 2021 and served in that capacity through February 2022. (Byrd Dep. at 8:17–8:22; 9:12–9:13). Sometime in late 2021, a now-deceased white woman named Isabella Zaliagris joined the Board. (Id. at 51:4–9). Isabella lived on Plaintiff's floor and complained about Plaintiff's Ring camera. (Id. at 49:1). Plaintiff maintains that, when Isabella complained about Plaintiff's Ring camera, Isabella was herself in violation of the Declaration's requirements regarding limited common elements. (Doc. No. 35 Ex. 6). Plaintiff maintains that several other white unit owners were also in violation of the declarations, but Defendant did not enforce the declarations against them. (Id.).

Unit owner Manny Ndingwan ("Manny") also served on the Board with Plaintiff. (Manny Dep. at 24:8–12; 39:23–25; 40:1–7; 45:2–9). As early as November 22, 2020, Manny became aware of Plaintiff's Ring camera. (Doc. No. 35 Ex. 4). Plaintiff alleges that, sometime after she installed her Ring camera, Manny tried to kiss Plaintiff. Plaintiff refused because

4

Manny is married. (Byrd Dep. at 151:15–17; 158:25–159:10). Manny also asked Plaintiff to spend a weekend with him at his condominium in Greensboro, North Carolina. (Byrd Dep. at 156:6–13). Plaintiff claims that her denial of Manny's proposition led him to abuse his influence on the Defendant Board against Plaintiff. (Byrd Dep. at 149:14–22).

Plaintiff also suggests that Bryce Shearer ("Bryce"), who served as Vice President of Fat City board when Plaintiff Byrd became a unit owner, knew about modifications to the doors of other units, but he did not fine white residents for these violations. (See, Doc. No. 35 Ex. 5).

Plaintiff also presented evidence regarding Austin Tinsley ("Austin"), a member of the Board from June 2020 until March 2021. (Byrd Dep. at 38:10–14). Austin regularly complained about Plaintiff parking two cars in the parking lot. (Id. at 130:14–16). The Board sent Austin a cease-and-desist letter in August 2021, but he continued harassing and intimidating Plaintiff, eventually leading a campaign to remove Plaintiff from the Board. (Id. at 77:19–23; 109:25; 110:1–16). Austin also accused Plaintiff of brandishing a gun at him. (Id. at 160:8). At an owner's association meeting with board members present, Austin and another unit owner criticized Plaintiff for reporting residents illegally parking in the designated handicap spaces. Austin also made racist remarks while serving on the board. (Byrd Dep. 40:7–21; 41:7–17). Specifically, Austin allegedly stated that "you can't reason with Black women." (Id. at 40:12–17). Plaintiff was anonymously mailed a bag of gummy male genitalia and told to "eat a bag of dicks." (Id. at 63:13–15).

The homeowners removed Plaintiff from the board on February 4, 2022. (Id. at 198:22–23). Plaintiff engaged a local mediator, resulting in Bryce Shearer and other board members yelling at Byrd during a board meeting and stating that she had no right to spend board time discussing her decision. (Byrd Dep. 64:22–66:6; 68:15–22).

5

Hawthorne Management, Fat City's management company, initially refused to cite Plaintiff for the Ring camera violation on the grounds that the board's request was "blatantly targeted" and "blatantly discriminatory." (Doc. No. 35 Ex. 6). Eventually, Hawthorne Management decided to cite Plaintiff for her violation and informed Plaintiff that she would be fined $100, plus an additional $100 per day after five days, if she did not remove her Ring camera. (Compl. ¶ 39). According to Plaintiff, other residents in violation of the Declaration, rules, regulations and or covenants, received notices after the fact but were not subjected to a fine for their respective violations, with the exception of one unit owner. (Byrd Dep. at 165:19–25; 166:1–3). Plaintiff contends that Defendant started to send violation warnings to other residents only after Plaintiff complained about selective enforcement. (Byrd Dep. at 125:22–126:1; see also, Doc. No. 35 Ex. 6).

## II. STANDARD OF REVIEW

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather,

the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

### III. DISCUSSION

**A. Plaintiff's Section 1981 Claim**

Title VII and Section 1981 prohibit intentional racial discrimination. 42 U.S.C. § 2000e-2(a). Section 1981 provides, in pertinent part, that "all persons within the jurisdiction of the United States shall have the same right…to make and enforce contracts…as is enjoyed by white citizens." 42 U.S.C. § 1981. The right extends to "the enjoyment of all benefits, privileges,

7

terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

To establish a Section 1981 claim, the plaintiff must show that (1) she is a member of a racial minority; (2) the defendant had an intent to discriminate based on race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. Bobbitt by Bobbitt v. Rage Inc., 19 F. Supp. 2d 512, 517 (W.D.N.C. 1998) (quoting Bellows v. Amoco Oil Co., 118 F.3d 268, 274 (7th Cir. 1997)).

Under the McDonnell Douglas burden-shifting framework applied in Title VII and Section 1981 cases, the plaintiff has the burden of establishing a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Once the plaintiff establishes her prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged action. Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010). If the defendant carries this burden, the plaintiff then must prove by a preponderance of the evidence that the reasons offered by the defendant were not its true reasons, but instead mere pretext for discrimination. Id.

A plaintiff may avoid summary judgment on a discrimination claim by "presenting direct or circumstantial evidence" that raises a genuine issue of material fact. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). Here, the Court finds that genuine issues of disputed facts preclude summary judgment on Plaintiff's Section 1981 discrimination claim, as Plaintiff has presented some evidence that white owners were treated differently from Plaintiff with respect to violations.[2] The Court will deny the summary judgment motion as to Plaintiff's

---

[2] Defendant argued at the hearing on summary judgment that if white owners were not cited it was because Plaintiff, as a Board member responsible for issuing violation notices, did not send the violation notices. This is a contested factual issue that Defendant can explore at trial through cross-examination.

8

Section 1981 claim.

### B. Plaintiff's Claim for Intentional Infliction of Emotional Distress

Under North Carolina law, the essential elements of a claim for intentional infliction of emotional distress are "(1) extreme and outrageous conduct by the [defendant]; (2) which is intended to and does in fact cause (3) severe emotional distress." Waddle v. Sparks, 331 N.C. 73, 82 (1992) (citing Dickens v. Puryear, 302 N.C. 437, 452 (1981)). Whether conduct constitutes extreme and outrageous behavior is initially a question of law for the court. Simmons v. Chemol Corp., 137 N.C. App. 319, 325 (2000). "To establish the essential element of extreme and outrageous conduct, the conduct must go beyond all possible bounds of decency and 'be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Wagoner v. Elkin City Sch. Bd. of Educ., 113 N.C. App. 579, 586 (1994)). "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" will not be found to constitute extreme and outrageous conduct. See Jonson v. Bollinger, 86 N.C. App. 1, 6 (1987) (quoting Briggs v. Rosenthal, 73 N.C. App. 672, 677 (1985) (holding IIED claim properly dismissed where defendant approached plaintiff in angry and threatening manner while carrying a pistol, shook his hand in plaintiff's face, and said loudly, "I will get you"); see also Smith-Price v. Charter Behavioral Health Sys., 164 N.C. App. 349, 355 (2004) (affirming summary judgment on IIED claim by supervisor against former employee where supervisor confronted employee, and employee responded by threatening to make accusations against her, yelled at her, walked off his assignment and when he returned threw a package of papers at supervisor); Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 493–94 (1986) (affirming summary judgment for defendants as to IIED claims where allegations involved screaming and shouting, name-calling, throwing menus, and various hostile acts toward pregnant employee).

9

Plaintiff fails to show that the conduct she experienced goes beyond all possible bounds of decency and is considered atrocious and utterly intolerable in a civilized community. At most, Plaintiff has alleged: (1) some residents vaguely and without specifics "harassed and belittled" her for reporting discriminatory enforcement and illegal parking; (2) a married board member propositioned her to spend a weekend with him; and (3) an unknown individual mailed her a bag of gummy male genitalia with a crude note. While these alleged acts may be in bad taste, they are, at most, "[m]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" and are not beyond all possible bounds of decency. Accordingly, Defendant is entitled to judgment as a matter of law against Plaintiff's claim for intentional infliction of emotional distress.

More importantly, even if the Court were to find the acts cumulatively constitute "extreme and outrageous conduct," they do not support a claim against Defendant. All or most of the allegedly infringing conduct alleged by Plaintiff was done by individuals, often residents. Moreover, the primary bad actors in Plaintiff's account were not on the Board of Defendant when Plaintiff suffered alleged emotional damages. And even if they had been, Plaintiff cannot point to any evidence that Defendant authorized these residents to act on its behalf or had sufficient control over the actions of these residents.

"Two essentials are present in a principal-agent relationship: (1) Authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent. Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Colony Assocs. v. Fred L. Clapp & Co., 60 N.C. App. 634, 637–38 (1983) (citations omitted). Here, the residents did not have express or implied authority to act for Defendant.

10

Further, the Defendant did not have authority over the residents. Accordingly, there was no principal-agent relationship through which Defendant can be held liable for individual board-members' conduct allegedly causing Plaintiff's emotional damages.

Moreover, even if the individuals who engaged in the alleged offending conduct were considered agents of Defendant, Defendant is not liable for their torts. "As a general rule, liability of a principal for the torts of his agent may arise in three situations: (1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business; or (3) when the agent's act is ratified by the principal." Hogan, 79 N.C. App. at 491.

Here, there is no evidence that the Board, which included Plaintiff, authorized the acts of the offending individuals. There is also no evidence the acts by the alleged offending individuals were in furtherance of Defendant's business as an owners' association. Finally, there is no evidence that Defendant ratified any act by any of the offending individuals. Accordingly, even if the alleged conduct was "extreme and outrageous," Defendant is not liable for such conduct. Therefore, Defendant is entitled to judgment against Plaintiff's claim for intentional infliction of emotional distress as a matter of law.

### C. Plaintiff's Claim for Breach of Fiduciary Duty

Plaintiff claims that Defendant breached its fiduciary duty by: (a) failing to promptly fix allegedly malfunctioning cameras; (b) discriminatorily and selectively enforcing violations of the Declarations; (c) admonishing Plaintiff for reporting violations of the Declarations and reporting illegal parking; (d) accusing Plaintiff of shutting down the camera network for the property; and (e) allowing continued harassment of Plaintiff by other residents.

A claim for breach of fiduciary duty requires a plaintiff to show that "(1) the defendant

11

owed the plaintiff a fiduciary duty; (2) the defendant breached that fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to the plaintiff." Sykes v. Health Network Sols., Inc., 372 N.C. 326, 339 (2019). "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." Dalton v. Camp, 353 N.C. 647, 651 (2001) (citations omitted). There are two kinds of fiduciary relationship: (1) those arising from legal relations such as attorney and client, broker and client, partners, principal and agent, trustee and cestui que trust (de jure fiduciary relationship), and (2) those that exist as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other (de facto fiduciary relationship). See S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC, 189 N.C. App. 601, 613 (2008).

The North Carolina Condominium Act makes clear that officers and members of the board owe fiduciary duties to the association and the unit owners. See N.C. GEN. STAT. § 47C-3-103(a) ("In the performance of their duties, the officers and members of the executive board shall be deemed to stand in a fiduciary relationship to the association and the unit owners and shall discharge their duties in good faith, and with that diligence and care which ordinarily prudent persons would exercise under similar circumstances in like positions."). However, nothing in the statutory language of Section 47C-3-103(a) suggests that the association itself owes fiduciary duties to the unit owners. See, id.; see also, Howe v. Links Club Condo. Ass'n, 263 N.C. App. 130, 148 (2018) (holding that a condominium association owed a fiduciary duty to minority unit owners in a condominium complex in its capacity as a trustee for the sale of a condominium); Progress Point One-B Condo. Ass'n, Inc. v. Progress Point One Prop. Owners Ass'n, Inc., No. 14 CVS 467, 2015 WL 859833 (N.C. Super. Mar. 2, 2015) (finding no fiduciary duty owed by the condominium association where the association filed a complaint against a property owners

12

association alleging, among other things, breach of fiduciary duty related to the alleged improper collection of assessments). Thus, Section 47C-3-103(a) does not create a de jure fiduciary relationship.

Plaintiff has also failed to present evidence showing that a de facto fiduciary relationship exists between her and Defendant. Accordingly, as the Defendant association does not owe Plaintiff any fiduciary duties, it cannot breach any such duties. Thus, Defendant is entitled to judgment against Plaintiff's claim for breach of fiduciary duty as a matter of law.

### D. Defendant's Counterclaims for Breach of Contract and Declaratory Judgment.

Finally, the Court denies summary judgment as to the counterclaims because these counterclaims depend on whether a jury finds that Defendant selectively enforced the Declarations against Plaintiff based on her race in violation of Section 1981.

## IV. CONCLUSION

For the reasons stated herein, the Court denies Defendant's summary judgment motion in part and grants it in part.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 28), is **DENIED** in part and **GRANTED** in part. Plaintiff's Section 1981 discrimination claim shall proceed to trial, but her claims for intentional infliction of emotional distress and breach of fiduciary duty are dismissed. Furthermore, because the Court finds that there are genuine issues of disputed fact as to the Section 1981 claim, the Court denies Defendant's summary judgment motion on its counterclaims for breach of contract and declaratory judgment.

Signed: November 20, 2023

Max O. Cogburn Jr
United States District Judge